**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **ALLISON BAVER**, | |
| Plaintiff, | |
| v. | Civ. Action No.: 1:24-cv-00641-JLH |
| **FOX CORPORATION, FOX NEWS NETWORK, LLC, and MEGAN HENNEY**, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

**OF COUNSEL:**

Patrick F. Philbin (*pro hac vice*)
Kyle T. West (*pro hac vice*)
Chase T. Harrington (*pro hac vice*)
**TORRIDON LAW PLLC**
801 Seventeenth Street NW
Suite 1100
Washington, DC 20006
(202) 249-6900
pphilbin@torridonlaw.com
kwest@torridonlaw.com
charrington@torridonlaw.com

DATED: August 8, 2025

John L. Reed (DE I.D. No. 3023)
**DLA PIPER LLP (US)**
1201 N. Market Street
Suite 2100
Wilmington, DE 19801
(302) 468-5700
john.reed@us.dlapiper.com

*Attorneys for Defendants Fox Corporation, Fox
News Network, LLC, and Megan Henney*

**TABLE OF CONTENTS**

<u>**PAGE**</u>

NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

SUMMARY OF THE ARGUMENT .......................................................................... 1

STATEMENT OF FACTS ....................................................................................... 3

    A.    Fox Reports On Plaintiff's Indictment For Making False Statements To A Bank And Money Laundering. ............................................................. 3

    B.    Plaintiff's Lawsuit ........................................................................... 5

LEGAL STANDARD ........................................................................................... 5

CHOICE OF LAW .............................................................................................. 6

ARGUMENT ..................................................................................................... 7

I.    PLAINITFF'S DEFAMATION CLAIM SHOULD BE DISMISSED. ........................... 7

    A.    The Defamation Claim Is Time-Barred. ............................................... 7

    B.    Plaintiff Fails To State A Claim for Defamation. ................................... 8

        1.    The Article Was Substantially True. ................................... 8

        2.    The Challenged Statements Are Privileged Fair Reports. ........... 13

            a.    If Utah Law Applies, The Article Is Privileged Notwithstanding Utah's Additional Requirement That The Report Be Made "Without Malice." .............................................. 15

                i.    Utah's Exception For Common Law Malice Is Unconstitutional And, In Any Event, Plaintiff Has Failed To Allege Common Law Malice. ........................ 15

                ii.    Plaintiff Fails To Allege Actual Malice. ........................... 17

        3.    Plaintiff Fails To Allege Facts Showing Fault. ........................ 18

            a.    New York Law Bars Plaintiff's Claim Because She Fails To Allege Actual Malice. ................................................ 19

            b.    Plaintiff's Claim Fails Under Utah Law Because She Fails To Allege Common Law Malice. ................................... 19

i

   c. Even If A Negligence Standard Applied, Plaintiff Has Failed
    To Plausibly Allege Negligence. ................................................... 20

II. PLAINTIFF'S OTHER CLAIMS FAIL FOR SIMILAR REASONS. ........................... 20

  A. Plaintiff's False Light Claim Fails. ........................................................ 21

  B. Plaintiff's Claim For Intentional Interference With Prospective Economic
   Advantage Fails. ........................................................................... 21

  C. Plaintiff's Claim For Injunctive Relief Fails. ........................................ 22

III. THE COURT LACKS PERSONAL JURISDICTION OVER MS. HENNEY. .............. 22

IV. PLAINTIFF FAILS TO PLEAD FACTS CONCERNING FOX CORPORATION ....... 24

CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Albert v. Loksen*,
   239 F.3d 256 (2d Cir. 2001)..................................................................8

*Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*,
   435 F.3d 396 (3d Cir. 2006)................................................................17

*Anderson v. Cramlet*,
   789 F.2d 840 (10th Cir. 1986) ............................................................11

*Arpaio v. Cottle*,
   2019 WL 11322515 (D.D.C. Dec. 3, 2019)........................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................5

*Avena v. Imperial Salon & Spa, Inc.*,
   2017 WL 6389086 (M.D. Fla. Aug. 31, 2017) ...................................25

*Bates v. Utah Ass'n of Realtors*,
   297 P.3d 49 (Utah Ct. App. 2013) ......................................................21

*Baver v. Fox Corp.*,
   N24-C-05-262 (Del. Sup.) ....................................................................8

*Benihana of Tokyo, Inc. v. Benihana, Inc.*,
   828 F. Supp. 2d 720 (D. Del. 2011).....................................................6

*Bio/Basics Int'l Corp. v. Ortho Pharm. Corp.*,
   545 F. Supp. 1106 (S.D.N.Y. 1982).....................................................7

*Biro v. Condé Nast*,
   883 F. Supp. 2d 441 (S.D.N.Y. 2012)..................................3, 8, 10, 14

*Biro v. Condé Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013)..................................................8

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
   582 U.S. 255 (2017)............................................................................24

*BYD Co. v. VICE Media LLC*,
   531 F. Supp. 3d 810 (S.D.N.Y. 2021).................................................18

*Cabello-Rondon v. Dow Jones & Co.*,
   2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017) .....................................9

*CDC Newburgh v. STM Bags*,
    692 F. Supp. 3d 205 (S.D.N.Y. 2023) ...................................................................16

*Celtig, LLC v. Patey*,
    347 F. Supp. 3d 976 (D. Utah 2018) ....................................................................24

*City of Newark v. Delmarva Power & Light Co.*,
    497 F. Supp. 323 (D. Del. 1980) ...........................................................................6

*Condit v. Dunne*,
    317 F. Supp. 2d 344 (S.D.N.Y. 2004) ..................................................................17

*Costanza v. Seinfeld*,
    181 Misc. 2d 562 (N.Y. Sup. Ct. 1999) ...............................................................21

*Cox Broad. Corp. v. Cohn*,
    420 U.S. 469 (1975) ..............................................................................................16

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
    551 F. Supp. 3d 320 (S.D.N.Y. 2021) ..................................................................19

*Cummings v. City of New York*,
    2020 WL 882335 (S.D.N.Y. Feb. 24, 2020) ........................................................14

*Davidson v. Baird*,
    438 P.3d 928 (Utah Ct. App. 2019) .....................................................................22

*DeBry v. Godbe*,
    992 P.2d 979 (Utah 1999) ...............................................................................16, 17

*Diamond Ranch Acad., Inc. v. Filer*,
    2016 WL 633351 (D. Utah Feb. 17, 2016) ........................................................8, 22

*Epps v. Fox News Network, LLC*,
    2025 WL 2205982 (D. Del. Apr. 1, 2025) ...........................................................7, 21

*Fatouros v. Lambrakis*,
    627 F. App'x 84 (3d Cir. 2015) ............................................................................24

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ..............................................................................................19

*Giordano v. Nickler*,
    1986 WL 5855 (Del. Super. May 9, 1986) .............................................................8

*Goldman v. Reddington*,
    417 F. Supp. 3d 163 (E.D.N.Y. 2019) ...................................................................9

*Haigh v. Marathon Letourneau Co.*,
    1988 WL 146520 (Del. Super. Dec. 29, 1988) ...................................................................8

*Handelsman v. S.F. Chronicle*,
    11 Cal. App. 3d 381 (1970) ...................................................................11

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989)...................................................................17, 18

*Hildebrant v. Meredith Corp.*,
    63 F. Supp. 3d 732 (E.D. Mich. 2014)...................................................................11

*Hogan v. Winder*,
    762 F.3d 1096 (10th Cir. 2014) ...................................................................9, 21

*Huckabee v. Meta Platforms, Inc.*,
    2024 WL 4817657 (D. Del. Nov. 18, 2024) ...................................................................22

*Huizenga v. NYP Holdings, Inc.*,
    2019 WL 1620743 (S.D.N.Y. Apr. 16, 2019)...................................................................18, 22

*Jensen v. Sawyers*,
    130 P.3d 325 (Utah 2005)...................................................................21

*Johnson v. Warner Bros. Ent.*,
    2017 WL 588714 (D. Del. Feb. 14, 2017) ...................................................................7

*Jones v. Globe Int'l*,
    1995 WL 819177 (D. Conn. Sept. 26, 1995) ...................................................................13

*Kabbaj v. Simpson*,
    547 F. App'x 84 (3d Cir. 2013) ...................................................................24

*Karedes v. Ackerley Group, Inc.*,
    423 F.3d 107 (2d Cir. 2005)...................................................................14, 15

*Keisel v. Westbrook*,
    542 P.3d 536 (Utah Ct. App. 2023) ...................................................................8

*Kinsey v. N.Y. Times Co.*,
    991 F.3d 171 (2d Cir. 2021)...................................................................6

*L. Offs. of Jon Divens & Assocs. v. LNJ Enters.*,
    2013 WL 12122578 (C.D. Cal. May 8, 2013) ...................................................................13

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
    838 F.2d 1287 (D.C. Cir. 1988) ...................................................................16

*Lohrenz v. Donnelly*,
    223 F. Supp. 2d 25 (D.D.C. 2002) ...........................................................................18

*Marom v. Pierot*,
    2020 WL 1444938 (S.D.N.Y. Mar. 25, 2020) ...........................................................9

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991) ................................................................................................2, 9

*Merck & Co. v. Barr Labs.*,
    179 F. Supp. 2d 368 (D. Del. 2002) .........................................................................23

*Murphree v. US Bank of Utah, N.A.*,
    282 F. Supp. 2d 1294 (D. Utah 2003) .......................................................................20

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) .......................................................................................2, 15, 17

*Nichols v. Moore*,
    477 F.3d 396 (6th Cir. 2007) ....................................................................................11

*Ogden Bus Lines v. KSL, Inc.*,
    551 P.2d 222 (Utah 1976) .........................................................................................19

*Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*,
    685 A.2d 724 (Del. Super. 1996) ..............................................................................23

*Pace v. Baker-White*,
    850 F. App'x 827 (3d Cir. 2021) .........................................................................17, 18

*Parker v. Learn Skills Corp.*,
    530 F. Supp. 2d 661 (D. Del 2008) ...........................................................................22

*Peters v. Kaleyra, Inc.*,
    2024 WL 4333143 (D. Del. Sept. 27, 2024) ...............................................................3

*Phila. Newspapers, Inc. v. Hepps*,
    475 U.S. 767 (1986) ....................................................................................................9

*Potts v. Potts*,
    2021 WL 4440666 (N.D.N.Y. Sept. 27, 2021) .........................................................21

*Reach & Assocs., P.C. v. Dencer*,
    269 F. Supp. 2d 497 (D. Del. 2003) ..........................................................................23

*Redding v. Freeman Prods., Inc.*,
    1995 WL 410922 (N.D. Ill. July 10, 1995) ...............................................................25

*Remick v. Manfredy*,
    238 F.3d 248 (3d Cir. 2001)..........................................................................................24

*Rock Star Enters., LLC v. Vill. of Sylvan Beach*,
    237 A.D.3d 1601 (N.Y. App. Div. 2025) ................................................................22

*Rosen v. Sapir*,
    2021 WL 4523713 (S.D.N.Y. Sept. 30, 2021)........................................................11

*Russell v. Thomson Newspapers*,
    842 P.2d 896 (Utah 1992) ....................................................................... *passim*

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014)..........................................................................................3

*Seegmiller v. KSL, Inc.*,
    626 P.2d 968 (Utah 1981) ...............................................................................19, 20

*Shrader v. Biddinger*,
    633 F.3d 1235 (10th Cir. 2011) ...............................................................................24

*Smartmatic USA Corp. v. Fox Corp.*,
    213 A.D.3d 512 (N.Y. App. Div. 2023) ................................................................25

*Solaia Tech., LLC v. Specialty Pub. Co.*,
    852 N.E.2d 825 (Ill. 2006) .......................................................................................16

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)...................................................................................................17

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
    864 F.3d 236 (2d Cir. 2017).................................................................... *passim*

*Teague v. Christian*,
    2019 WL 4686717 (D. Utah Sept. 25, 2019)........................................................22

*Triestman v. Slate Grp.*,
    2020 WL 1450562 (D. Del. Mar. 25, 2020) ...........................................................7

*United States v. Bestfoods*,
    524 U.S. 51 (1998).....................................................................................................25

*URS Corp. v. Lebanese Co. for Dev. & Reconstruction of Beirut Cent. Dist. SAL*,
    512 F. Supp. 2d 199 (D. Del. 2007).........................................................................23

*Westmoreland v. CBS Inc.*,
    596 F. Supp. 1170 (S.D.N.Y. 1984)........................................................................18

*Whitehead v. Yelen Ent.*,
2024 WL 3652826 (E.D.N.Y. Aug. 5, 2024) .................................................................13

*Wynn v. Wachovia Bank, N.A.*,
2009 WL 1255464 (E.D. Va. May 6, 2009) ..................................................................16

*XPO Logistics, Inc. v. Peterson*,
2025 WL 1114392 (D. Utah Apr. 15, 2025) .............................................................16, 20

**Statutes**

18 U.S.C. § 401(3) ..............................................................................................................5

18 U.S.C. § 1014 .............................................................................................................3, 5

18 U.S.C. § 1957 .............................................................................................................3, 5

10 *Del. C.* § 3104(c) ..........................................................................................................23

10 *Del. C.* § 8119 ...............................................................................................................7

10 *Del. C.* § 8121 ...........................................................................................................1, 7

N.Y. Civ. Rts. Law § 76-a(2) ............................................................................................19

N.Y. C.P.L.R. § 215(3) ........................................................................................................7

UT Code § 45-2-3(4) ...........................................................................................13, 14, 15

UT Code § 78B-2-302(4) .....................................................................................................7

**Rules**

Del. Sup. Ct. R. Civ. P. 3(a) ...............................................................................................8

**Other Authorities**

Alex Mitchell, *COVID crooks: The most outrageous relief fund scammers busted
so far*, N.Y. Post (Dec. 22, 2021), https://perma.cc/5SWU-DAP7 ..............................4

Jessica Wang, *Former Olympic speed skater Allison Baver charged with falsely
obtaining funds for Elijah Wood film*, Ent. Weekly (Dec. 19, 2021),
https://perma.cc/XUQ3-HREG .....................................................................................4

Lukas I. Alpert, *From fast cars to fancy real estate, 5 of the most outrageous
COVID-19 relief scams since the pandemic began*, MarketWatch (Jan. 10,
2022), https://perma.cc/SCL2-T4Z4 .............................................................................4

Model Utah Jury Instructions 2d, CV1608 ...................................................................16, 20

Oxford English Dictionary (2d ed. 1989) ................................................................11

Restatement of the Conflict of Laws § 382(2) ..........................................................7

Restatement (Second) of Conflicts § 150 cmt. b .......................................................7

Restatement (Second) of Torts § 580B ....................................................................20

Restatement (Second) of Torts § 611............................................................14, 16

1 Smolla, *Law of Defamation* § 3:1 (2d ed.).........................................................19

2 Smolla, *Law of Defamation* § 8:75 (2d ed.).......................................................14

2 Smolla, *Law of Defamation* § 8:76 (2d ed.)..................................................13, 14

2 Smolla, *Law of Defamation* § 10:23 (2d ed.).....................................................21

*U.S. Olympian Allison Baver Indicted Over Alleged False $10M PPP Claim for Elijah Wood Movie*, Newsweek (Dec. 20, 2021), https://perma.cc/ZTE3-Z48M..........................................................................................................................4

World Book Dictionary (1985)................................................................................11

## NATURE AND STAGE OF THE PROCEEDINGS

After Plaintiff sued Fox Corporation, Megan Henney, and other Fox entities for defamation in Delaware state court, Defendants removed to this Court on May 30, 2024. D.I. 1. In December 2024, Plaintiff filed an Amended Complaint naming as Defendants Fox Corporation ("Fox Corp."); Fox News Network, LLC ("Fox News"); and Megan Henney. Am. Compl., D.I. 12. After service was finally accomplished, *see* D.I. 34, 35, or waived, *see* D.I. 38, this Court issued an order setting a date to respond to the Amended Complaint of August 8, *see* D.I. 43.

## SUMMARY OF THE ARGUMENT

This defamation action is frivolous. In December 2021, a federal grand jury in Utah indicted Plaintiff—a former Olympic speed skating medalist—on eight counts of making false statements to a financial institution and one count of money laundering. The indictment alleged that, through false statements to banks, Plaintiff fraudulently obtained a $10 million loan for her wholly owned LLC under the Paycheck Protection Program ("PPP")—a federal program designed to help small businesses keep workers on payroll during the COVID-19 pandemic. According to the indictment, Plaintiff's company had no employees and she lied about that to get the money. In January 2022, Fox Business, a unit of Fox News Channel, LLC ("Fox News"), published an online article (with a byline by Megan Henney) (the "Article") that accurately described the charges in the indictment. Plaintiff was subsequently convicted by a jury in Utah. Her effort to turn the Article into the basis for a defamation action is baseless.

*First*, any defamation claim is time-barred. Under Delaware's borrowing statute, the Court must apply the shorter of Delaware's statute of limitations or the statute of limitations where the action arose. 10 *Del. C.* § 8121. This action arose either in Utah (Plaintiff's domicile) or New York (the place of publication), and both States have a one-year statute of limitations, which is shorter than Delaware's two-year statute. Accordingly, a one-year limitations period applies.

Plaintiff's claim is barred because she did not file her initial complaint until January 2024, more than two years after the challenged Article was published.

*Second*, the Article was substantially true.  Substantial truth defeats a claim for defamation, and requires only that "the gist, the sting, of the libelous charge be justified."  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991).  As detailed below, the Article tracked the allegations in the indictment.  Indeed, it is difficult to see what Plaintiff thinks was false.  She complains that the headline "unfairly insinuate[s]" that she "was accused of specific crimes of stealing, theft, and personally siphoning funds."  The headline reads: "Olympic medalist accused of stealing millions in COVID-19 relief money.  Allison Baver accused of siphoning $10 million in Paycheck Protection Program funds."  Especially in the context of the rest of the Article, which provides more detail about the charges, that was substantially true.  Plaintiff was personally charged with illegally obtaining $10 million by false statements and diverting that money from its proper purpose under the PPP.  The gist of the headline and the Article was entirely accurate.

*Third*, the Article is privileged under both New York and Utah law as a fair report on a government proceeding—the grand jury indictment.  This privilege exists precisely to protect media organizations when they keep the public informed by reporting on government proceedings, including criminal charges.  Because the Article gives a substantially accurate description of the indictment, any defamation claim is foreclosed even if Plaintiff were innocent of the charges.

*Fourth*, Plaintiff fails to allege the requisite degree of fault on the part of Defendants.  New York law requires Plaintiff to show actual malice—that is, that Defendants acted "with knowledge that [their statements] [were] false or with reckless disregard of whether [they were] false or not."  *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).  Under Utah law, Plaintiff must allege either

actual malice or common law malice—that is, spite or ill will. Plaintiff fails to allege facts plausibly showing either level of fault.

Plaintiff's claims for false light and intentional interference with prospective economic advantage are equally deficient. They are time-barred and also fail for many of the same reasons the underlying defamation claim fails.

Finally, the Court should dismiss Ms. Henney and Fox Corporation for additional reasons. Plaintiff fails to allege any facts establishing personal jurisdiction over Ms. Henney, who is not a resident of Delaware, and Ms. Henney has filed a declaration confirming that she has no minimum contacts with Delaware. Plaintiff also fails to allege any facts suggesting that any Fox Corporation employee played a role in the Article's publication. And under the principle of corporate separateness, Fox Corporation cannot be sued simply because it is the ultimate parent of Fox News.

## STATEMENT OF FACTS

### A.    Fox Reports On Plaintiff's Indictment For Making False Statements To A Bank And Money Laundering.

In December 2021, a federal grand jury in Utah indicted Plaintiff, a former Olympic speed skating medalist, on eight counts of making false statements to a financial institution under 18 U.S.C. § 1014 and one count of money laundering under 18 U.S.C. § 1957. *See* Indictment, *United States v. Baver*, No. 2:21-cr-520 (D. Utah Dec. 14, 2021), ECF No. 1 (Ex. 1).[1] The indictment alleged that Plaintiff, as the sole "owner and registered agent" for Allison Baver Entertainment, LLC ("ABE"), defrauded PPP. *Id.* ¶ 2. PPP is a federal program that facilitated forgivable loans

---

[1] Exhibits are attached to the Declaration of John L. Reed, Esq., filed with this document. The Court can take notice of documents "integral" to a complaint, or when a claim "hinge[s] on [their] contents." *Peters v. Kaleyra, Inc.*, 2024 WL 4333143, at *2 (D. Del. Sept. 27, 2024) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). The Court can also take notice of public records, *id.*, and judicial records, *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 478 (S.D.N.Y. 2012).

to help small businesses keep workers on payroll during the COVID-19 pandemic.  *Id.* ¶ 8.
Plaintiff allegedly applied for eight PPP loans on behalf of ABE, certifying that it had 100 to 430
employees when it actually had none.  *Id.* ¶¶ 2, 12-20.  Meridian Bank approved one of those
applications and deposited $10 million in ABE's account.  *Id.* ¶ 22.

Due to Plaintiff's high profile as an Olympian with a career in the entertainment industry,
her indictment was widely covered in the press.[2]  Market Watch listed Plaintiff's alleged attempt
"to steal $10 million" from PPP as one of the top five "most outrageous" COVID-19 relief scams.[3]
After these articles were published, Fox News, d/b/a Fox Business, published on foxbusiness.com
the January 21, 2022 article at issue here, entitled "Olympic medalist accused of stealing millions
in COVID-19 relief money" (the "Article"), with Ms. Henney listed as author.  Am. Compl. ¶ 17,
D.I. 12; Article, D.I. 33-1 (Ex. 2).  This Article reported that "Allison Baver . . . has been charged
with eight counts of making a false statement to a bank and one count of money laundering,
according to the U.S. Attorney's General Office in Utah."  Ex. 2 at 2.  Specifically, "authorities
say that Baver lied on loan applications to fraudulently receive $10 million from" PPP.  *Id.*  She
"allegedly claimed in some applications for PPP funding that her company had an average monthly
payroll of $4 million and 105 employees" (and in others that "she had 430 workers") but, according
to the indictment, "actually had no employees or monthly payroll."  *Id.*  Then, after ABE received
"a $10 million loan," Baver "transferred $150,000 to another production company."  *Id.* at 3.

---

[2] *See also, e.g.*, *U.S. Olympian Allison Baver Indicted Over Alleged False $10M PPP Claim for Elijah Wood Movie*, Newsweek (Dec. 20, 2021), https://perma.cc/ZTE3-Z48M; Alex Mitchell, *COVID crooks: The most outrageous relief fund scammers busted so far*, N.Y. Post (Dec. 22, 2021), https://perma.cc/5SWU-DAP7; Jessica Wang, *Former Olympic speed skater Allison Baver charged with falsely obtaining funds for Elijah Wood film*, Ent. Weekly (Dec. 19, 2021), https://perma.cc/XUQ3-HREG.

[3] Lukas I. Alpert, *From fast cars to fancy real estate, 5 of the most outrageous COVID-19 relief scams since the pandemic began*, MarketWatch (Jan. 10, 2022), https://perma.cc/SCL2-T4Z4.

On June 29, 2023, a jury convicted Plaintiff of two counts of making false statements to a financial institution under 18 U.S.C. § 1014; one count of money laundering under 18 U.S.C. § 1957; and one count of criminal contempt under 18 U.S.C. § 401(3). *See* Verdict, *Baver v. United States*, No. 2:21-cr-520 (D. Utah July 13, 2023), ECF No. 179 (Ex. 3).

### B.    Plaintiff's Lawsuit

Plaintiff filed a complaint in Delaware state court against Fox Corp., Megan Henney, and several local Fox television affiliates asserting claims including defamation.  D.I. 1-1.  The complaint was stamped received by the clerk on January 22, 2024—two years and one day after the Article was published.  But Plaintiff did not file a praecipe until May 17, 2024.  *See id.* at 17.  The case was removed to this Court on May 30, 2024.  D.I. 1.  Plaintiff then filed an Amended Complaint dropping the Fox television affiliates and naming only Fox Corp., Fox News, and Ms. Henney as defendants.  D.I. 12.  The Amended Complaint asserts claims for defamation, intentional interference with prospective economic advantage, false light, and injunctive relief.  *Id.*

The pro se Amended Complaint asserts that the Article "intentionally misrepresent[ed] [the] indictment," D.I. 12, ¶ 22, but is unclear as to what, exactly, was allegedly false.  It asserts that the Article's headline "unfairly insinuate[s]" that "Baver was accused of specific crimes of stealing, theft, and personally siphoning funds," *id.* ¶ 17, and that the Article "disregard[ed] ABE" and suggested "that Ms. Baver personally used the PPP loan for herself," *id.* ¶¶ 21-22.  As noted, however, the Article reported that the indictment alleged that the loan was received by ABE (of which Baver is the sole owner), and that Baver then "transferred $150,000 to another production company."  Ex. 2 at 3.

## LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

5

A plaintiff who seeks to recover "for conduct which is prima facie protected by the First Amendment" must provide "more specific allegations than would otherwise be required." *City of Newark v. Delmarva Power & Light Co.*, 497 F. Supp. 323, 326 (D. Del. 1980) (citation omitted).

## CHOICE OF LAW

Delaware choice-of-law rules track the Restatement (Second) of Conflict of Laws. *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720, 724-25 (D. Del. 2011). In a defamation action, the Restatement applies the law "of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties." Restatement (Second) of Conflicts § 150. In multi-state defamation cases, that rule creates a presumption in favor of the law of the plaintiff's domicile, but that result can be overcome (either generally or for a specific issue) if some other state has a greater interest. *See id.* & cmt. b.

Here, Plaintiff's domicile at the time of publication was Utah.[4] Nevertheless, New York law should govern. Fox News, publisher of the Article, is headquartered in and is a citizen of New York, as is Fox Corp. Am. Compl. ¶ 3, D.I. 12. As the Second Circuit has found, New York's interest in regulating its media entities is strong enough to overcome the presumption favoring the law of the plaintiff's domicile in multi-state defamation cases. *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176-78 & n.21 (2d Cir. 2021). At a minimum, New York's interest in applying its privilege rules in cases involving New York-based media entities requires applying (1) New York's fair report privilege, and (2) New York's requirement that a plaintiff challenging commentary on matters of public interest must show actual malice. *See, e.g.*, *id.* at 178 & n.27 (applying New York's fair report privilege because of state's interest "in regulating the conduct of its citizens and

---

[4] *See* Order Setting Conditions of Release at 2, *United States v. Baver*, No. 2:21-cr-520 (Jan. 18, 2022), ECF No. 13 (prohibiting Plaintiff from leaving Utah without prior permission).

its media"); *Bio/Basics Int'l Corp. v. Ortho Pharm. Corp.*, 545 F. Supp. 1106, 1113-14 (S.D.N.Y. 1982); Restatement of the Conflict of Laws § 382(2) ("A person who acts pursuant to a privilege conferred by the law of the place of acting will not be held liable for the results of his act in another state."); Restatement (Second) of Conflicts § 150 cmt. b (listing "privileges" as item to be considered on an issue-by-issue basis in choice-of-law analysis).

Ultimately, the Court need not make a final choice-of-law determination because the Amended Complaint fails under both New York and Utah law.

## ARGUMENT

## I.    PLAINITFF'S DEFAMATION CLAIM SHOULD BE DISMISSED.

### A.    The Defamation Claim Is Time-Barred.

Plaintiff's defamation claim should be dismissed in its entirety because it is time-barred. Under Delaware law, the court "appl[ies] the shorter of the Delaware statute of limitations or the statute of limitations of the state where the cause of action arose." *Triestman v. Slate Grp.*, 2020 WL 1450562, at *2 (D. Del. Mar. 25, 2020) (quotation omitted) (citing 10 *Del. C.* § 8121). A cause of action "arises" in the state that "has the most significant relationship to the claims and to the parties." *Johnson v. Warner Bros. Ent.*, 2017 WL 588714, at *3 (D. Del. Feb. 14, 2017). As noted, either New York or Utah has the most significant relationship to this case. *See supra* p. 6. Both jurisdictions set a one-year limitations period for defamation, *see* N.Y. C.P.L.R. § 215(3); UT Code § 78B-2-302(4); *see also Epps v. Fox News Network, LLC*, 2025 WL 2205982, at *1 (D. Del. Apr. 1, 2025), which is shorter than Delaware's two-year period, 10 *Del. C.* § 8119. As a result, a one-year limitations period governs here.

The Amended Complaint challenges an Article published on January 21, 2022 and allegedly "republished" by Fox television affiliates on January 21 and 22. Am. Compl. ¶¶ 17-18, D.I. 12. A defamation claim accrues upon publication and the limitations period runs regardless

of whether the challenged article remains available on the internet. *See, e.g.*, *Diamond Ranch Acad., Inc. v. Filer*, 2016 WL 633351, at *10 (D. Utah Feb. 17, 2016); *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 267 (S.D.N.Y. 2013). Plaintiff filed the original complaint, at the earliest, just over two years after publication, well outside the one-year limitations period.[5] Plaintiff's claim is therefore barred.

**B.    Plaintiff Fails To State A Claim for Defamation.**

The defamation claim also fails because Plaintiff fails to plead multiple elements of the cause of action. In New York and Utah, defamation requires, among other things, a factual statement that (1) "is false," (2) is "made with the applicable level of fault," and (3) is "not protected by privilege." *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001); *accord Keisel v. Westbrook*, 542 P.3d 536, 548 (Utah Ct. App. 2023). Plaintiff fails to allege any of these elements.

**1.    The Article Was Substantially True.**

The Amended Complaint fails to plausibly allege that the Article was false in any respect, and, in any event, judicially noticeable matters confirm it was substantially true.[6] Both New York and Utah require a defamation plaintiff to "plead facts . . . establish[ing] that the defendant's

---

[5] Even if a two-year limitations period applied, the claim would still be barred. Challenges to the Article published on January 21, 2022 would be barred because Plaintiff did not file the Complaint until two years and one day later, on January 22, 2024. Claims based on any purported republication on January 22, 2022 would also be barred, because the statute of limitations is not tolled until the complaint has been filed *with a praecipe*. *See* Del. Sup. Ct. R. Civ. P. 3(a); s*ee also Haigh v. Marathon Letourneau Co.*, 1988 WL 146520, at *1 (Del. Super. Dec. 29, 1988) ("No action has been commenced where the plaintiff fails to file a praecipe."); *Giordano v. Nickler*, 1986 WL 5855, at *1 (Del. Super. May 9, 1986) ("The filing of the praecipe as well as the complaint is, therefore, necessary in order to toll the statute of limitations."). Plaintiff did not file a praecipe until at least May 17, D.I. 1-1 at 17, and it was not docketed until May 28, 2024, *see* Docket, *Baver v. Fox Corp.*, N24-C-05-262 (Del. Sup.), https://perma.cc/5GLM-L3MJ—five months after any two-year limitations period had expired.

[6] The Court can take judicial notice of an indictment to assess whether a challenged publication accurately describes its contents. *Biro*, 883 F. Supp. 2d at 478.

statements were not substantially true." *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017); *see also Hogan v. Winder*, 762 F.3d 1096, 1105 & n.5 (10th Cir. 2014) (affirming dismissal under Utah law where plaintiff "fail[ed] to satisfactorily plead that the articles were false").[7] In assessing substantial truth, "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge [is] justified.'" *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991). Here, the "gist" or "sting" of the Article was accurate, and Plaintiff fails to allege that any statement in the Article was false.

To start, conclusory assertions that the Article contains "lies," or "falsified accusations of crimes," Am. Compl. ¶¶ 9, 17-19, 22-23, D.I. 12, are not allegations of fact plausibly pleading falsity. Plaintiffs must do more than "perfunctorily state that a statement is false; rather, [they] must identify *how* the defendant's statement was false," *Cabello-Rondon v. Dow Jones & Co.*, 2017 WL 3531551, at *6 (S.D.N.Y. Aug. 16, 2017) (quotation omitted), and "plead facts that, if proven, would allow a reasonable person to consider the statement false," *Goldman v. Reddington*, 417 F. Supp. 3d 163, 171-72 (E.D.N.Y. 2019); *see also, e.g.*, *Tannerite Sports, LLC*, 864 F.3d at 251-52 (affirming dismissal of defamation claim because "scattered, cryptic references" denying ties to terrorists "do not amount to proper pleading" of falsity); *Marom v. Pierot*, 2020 WL 1444938, at *3 (S.D.N.Y. Mar. 25, 2020) (dismissing pro se defamation complaint that failed to allege the existence of any documents or other "factual information that—if taken as true— disprove the statements made by Defendants").

Plaintiff focuses on the Article's headline and asserts that it "unfairly insinuate[s]" that "she was accused of specific crimes of stealing, theft, and personally siphoning funds." Am.

---

[7] The First Amendment also requires that "where a newspaper publishes speech of public concern, a private-figure plaintiff cannot recover damages without also showing that the statements at issue are false." *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 768-69 (1986).

Compl. ¶ 17, D.I. 12; *see also id.* ¶¶ 22, 32.[8]  It is difficult to discern exactly what aspect of that alleged "insinuation" Plaintiff intends to characterize as false.  *Cf. Tannerite Sports, LLC*, 864 F.3d at 251 ("Vagueness as to the complained-of conduct is particularly inappropriate when pleading a defamation claim . . . .  [S]pecificity is necessary so defendants and courts may address themselves to the parts . . . alleged to be false.").  But to start, Plaintiff cannot parse the headline in isolation.  "Challenged statements are not to be read in isolation, but must be perused as the average reader would against the whole apparent scope and intent of the writing."  *Biro*, 883 F. Supp. 2d at 457 (quotation omitted).  Here, the Article accurately explained that Plaintiff was charged with "eight counts of making a false statement to a bank and one count of money laundering."  Ex. 2 at 2.

The Article accurately tracked the indictment.  It reported the indictment's allegation that Plaintiff lied on PPP applications, claiming her company had an average monthly payroll of $4 million and 105 employees even though she actually had no employees and no payroll.  *Id.*; *accord* Ex. 1 ¶¶ 12-15 (alleging Plaintiff claimed "average monthly payroll was $4,000,000; when, in fact, ABE had no average monthly payroll" and "ABE had 105 employees; when, in fact, ABE had no employees").  It also reported that, on some applications, Plaintiff "said she had 430 workers."  Ex. 2 at 2; *accord* Ex. 1 ¶¶ 15-19 (alleging Plaintiff claimed "ABE had 430 employees").  It reported that Meridian Bank "approved a $10 million loan for Allison Baver Entertainment."  Ex. 2 at 3; *accord* Ex. 1 ¶ 22 ("Meridian Bank funded a PPP loan to ABE for $10,000,000").  It also reported that, "two months later, the indictment says, Baver transferred $150,000 to another production company behind the movie 'No Man of God.'"  Ex. 2 at 3; *accord* Ex. 1 ¶ 24 ("BAVER transferred $150,000 of ABE's PPP loan funds to Company X . . . for the

---

[8] The headline stated: "Olympic medalist accused of stealing millions in Covid-19 relief money.  Allison Baver accused of siphoning $10 million in Paycheck Protection Program funds."  Ex. 2.

purpose of investing in a film entitled *No Man of God*."). The Article read as a whole is substantially true and, again, the headline must be read together with the Article.

Moreover, to the extent Plaintiff intends to argue that it was false to say in the headline that she was accused of "theft" or "stealing" or "siphoning" funds, that theory fails for another reason: Those terms accurately describe the "gist" of the criminal charges to a lay audience. The indictment accused Plaintiff of submitting fraudulent statements to a bank to obtain $10 million in relief funds for which she was not eligible. Taking money dishonestly is, in ordinary speech, "theft" or "stealing." *See Steal*, Oxford English Dictionary (2d ed. 1989) ("To take dishonestly or secretly."); World Book Dictionary (1985) ("to . . . take dishonestly"). And "siphon" is commonly used in the sense of "to take money, especially dishonestly, and use it for a purpose which was not intended." *Rosen v. Sapir*, 2021 WL 4523713, at *10 (S.D.N.Y. Sept. 30, 2021). That matches the allegations in the indictment. To the extent there was any minor inaccuracy in the Article's use of shorthand (there was not), it "could have produced no worse an effect on the mind of a reader than the truth." *Tannerite Sports, LLC*, 864 F.3d at 241-42. "[T]echnical inaccuracies in legal terminology employed by nonlawyers are not actionable." *See Hildebrant v. Meredith Corp.*, 63 F. Supp. 3d 732, 739 (E.D. Mich. 2014) (quotation omitted); *see also Anderson v. Cramlet*, 789 F.2d 840, 844 (10th Cir. 1986) (same). Rather, it is well established that reports of criminal charges remain substantially true despite minor inaccuracies.[9] Moreover, as noted, those particular words

---

[9] *See, e.g.*, *Hildebrant*, 63 F. Supp. 3d at 739 (accurate to say police officers were "accused of stealing during a raid" where internal investigation found that they took "value[less]" items during inventory of a forfeited house and no charges were brought); *Nichols v. Moore*, 477 F.3d 396, 401 (6th Cir. 2007) (statement that plaintiff was "charged" with "conspiring to make and possess small bombs" substantially accurate where indictment accused plaintiff of "conspiracy to possess unregistered firearms" but listed as overt act experimenting with making small bombs); *Handelsman v. S.F. Chronicle*, 11 Cal. App. 3d 381, 387 (1970) (ruling that criminal term "theft" was not substantially untrue in reporting on civil action for conversion).

in the headline cannot be plucked out of the context of the full Article, which accurately detailed the charges for false statements and money laundering.

Insofar as Plaintiff intends to argue that the Article falsely suggested that she "was accused of *personally* 'siphoning $10 million,[']" Am. Compl. ¶ 22, D.I. 12 (emphasis added), and that the Article improperly "disregards ABE," *i.e.*, Allison Baver Entertainment, LLC, *id.*, that theory also fails. The Article correctly reports that Plaintiff was accused of lying "on loan applications . . . *for her company*" and that the loan ultimately was given to "Allison Baver Entertainment." D.I. 33-1 (emphasis added). Moreover, it is literally true that Plaintiff was accused "personally" of fraudulently obtaining the $10 million—she was indicted, not her company. Plaintiff also asserts the headline coupled with a picture of her misled readers to believe that she "personally used the PPP loan for herself." Am. Compl. ¶ 21, D.I. 12. That is also wrong. Again, the Article accurately recounted the indictment's allegation that Plaintiff received "a $10 million loan for Allison Baver Entertainment," and then "transferred $150,000 to another production company." Ex. 2 at 3. In any event, even if the Article had suggested that Baver "personally" used the loan (which it did not), it is hard to see how that would have a "worse an effect on the mind of a reader than the truth." *Tannerite Sports, LLC*, 864 F.3d at 241-42. The truth is that the indictment alleged that Plaintiff lied to get $10 million for her wholly owned LLC—which has no employees—failed to use the funds for their intended purpose (keeping others employed), and instead used the money for her own investment in a film project.

To the extent Plaintiff intends to assert that the Article is false because she did not actually commit the crimes alleged in the indictment, that is not the relevant test. The Article accurately describes the indictment. In any event, collateral estoppel bars Baver from claiming she did not commit the crimes. She has been convicted—*personally* convicted—of the conduct alleged in the

12

indictment, so she is legally barred from claiming those facts are false. Her conviction "actually and necessarily litigated" the facts underlying her bank fraud and money laundering charges. *See L. Offs. of Jon Divens & Assocs. v. LNJ Enters.*, 2013 WL 12122578, at *6 (C.D. Cal. May 8, 2013) (collecting cases); *Jones v. Globe Int'l*, 1995 WL 819177, at *7 (D. Conn. Sept. 26, 1995).

Finally, inasmuch as Plaintiff claims that it was false for the Article to state that the indictment alleged (i) that in some loan applications "she said she had 430 workers," and (ii) that "Baver actually had no employees or monthly payroll," Am. Compl. ¶ 32, that theory also fails. The indictment makes exactly those allegations. *See* Ex. 1 ¶¶ 15-19.

### 2.    The Challenged Statements Are Privileged Fair Reports.

Plaintiff's defamation claim also fails because the Article is a privileged "fair report" on a government proceeding. Both New York and Utah recognize a privilege creating immunity for fair descriptions of government proceedings. The privilege is designed to allow the press to cover accusations made during government proceedings, without regard to whether the underlying accusations ultimately end up being true, so long as the report fairly describes the proceedings. *See, e.g.*, 2 Smolla, *Law of Defamation* § 8:76 (2d ed.). Under New York law, "A civil action cannot be maintained . . . for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding." N.Y. Civ. Rts. L. § 74. Similarly, Utah privileges "a fair and true report," made "without malice, of a judicial, legislative, or other public official proceeding, or of anything said in the course thereof." UT Code § 45-2-3(4). The privilege applies to reporting on indictments. *See Whitehead v. Yelen Ent.*, 2024 WL 3652826, at *3 (E.D.N.Y. Aug. 5, 2024); *Russell v. Thomson Newspapers*, 842 P.2d 896, 900 (Utah 1992). The Court should apply New York's fair report privilege, *see supra* pp. 6-7, but Plaintiff's claim is barred under the law of either state.

To qualify for the privilege, a report must be a "fair and true" report of the proceedings.

N.Y. Civ. Rts. L. § 74; UT Code § 45-2-3(4).  A report is "true" if it is "substantially accurate," and it meets that standard "if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth."  *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 119 (2d Cir. 2005).[10]

Here, the Article was, at a minimum, a substantially accurate account of the indictment.[11] As explained, *see supra* Part I.B.1, the Article notes that Plaintiff was "accused of stealing millions in COVID-19 relief money"; explains that she got the money through a fraudulent application for a PPP loan for Allison Baver Entertainment, LLC; notes the amount; describes the false claims on the loan application underlying the charges; and explains that the source of the reporting was an "indictment" brought by "federal prosecutors."  D.I. 33-1.  The details in the Article track the allegations in the indictment.  *See supra* Part I.B.1; *compare* Ex. 2, *with* Indictment, Ex. 1.

To the extent Plaintiff argues that she did not commit the offenses described in the indictment, that is irrelevant to the fair-report analysis.  The privilege turns on whether the report fairly described the indictment, not whether the charges in the indictment were true.  *See, e.g.*, Smolla, *supra*, § 8:76; *Cummings v. City of New York*, 2020 WL 882335, at *16 (S.D.N.Y. Feb. 24, 2020) (the privilege "protects reporting on charges and allegations made in proceedings regardless of whether the underlying allegations are in fact true"); *Russell*, 842 P.2d at 902 (same).

Also unavailing is any theory that, because Plaintiff used her wholly owned corporation to receive the funds, the Article somehow wrongly "insinuate[d]" that she "personally" obtained the

---

[10] *See also* 2 Smolla, *supra*, § 8:75 (noting privilege does not require "perfect" accuracy); Restatement (Second) of Torts § 611 (reporting protected if "it conveys to the persons who read it a substantially correct account of the proceedings").

[11] On a motion to dismiss, the Court can take judicial notice of and "consider the allegations and statements in the court records in order to determine whether the Article provides a 'fair and true' report of those allegations and statements."  *Biro*, 883 F. Supp. 2d at 478.

funds.  *See supra* p. 12.  First, the Article is correct in stating that Plaintiff was accused.  The indictment charges Plaintiff, personally, with making false statements to obtain PPP funds and with laundering those funds.  Ex. 1.  And, again, she was convicted, personally, of both making false statements and money laundering.  Second, the detail that Plaintiff used a corporation to fraudulently obtain the PPP funds is irrelevant so long as "it does not produce a different effect on a reader than would a report containing the precise truth."  *Karedes*, 423 F.3d at 119.  There is no material difference between the Article's (correct) description of the indictment as charging Plaintiff with illegally obtaining the funds, and Plaintiff's theory that, technically, she used a corporation that she controlled to illegally obtain funds.  Even if there were a difference, the Article states that the fraudulent loan was approved for Plaintiff's *company*.  Ex. 2 at 3.

> **a.    If Utah Law Applies, The Article Is Privileged Notwithstanding Utah's Additional Requirement That The Report Be Made "Without Malice."**

Utah's fair report statute, unlike New York's, also requires that the report be made "without malice."  UT Code § 45-2-3(4).  Malice in this context can be shown by pleading that the statements were made with common law malice, meaning they were "made with ill will[ or] were excessively published," *Russell*, 842 P.2d at 905, or with actual malice, meaning that the "defendant did not reasonably believe his or her statements were true," *id.*; *accord N.Y. Times Co*, 376 U.S. at 280 (defining "actual malice" as "knowledge that [the statements were] false or with reckless disregard of whether [they were] false or not").

> **i.    Utah's Exception For Common Law Malice Is Unconstitutional And, In Any Event, Plaintiff Has Failed To Allege Common Law Malice.**

Because Utah's common law malice exception would allow the press to be held liable for an accurate report of a government proceeding if it were published with "ill will," it cannot be enforced consistent with the First Amendment.  As the Supreme Court has explained, "the First

and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 496 (1975); *see also Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 843 (Ill. 2006) (limiting fair report privilege to publications made without malice violates First Amendment).[12]

In any event, Plaintiff has failed to allege common law malice. The first type of common law malice requires showing that the defendant was motivated primarily by an intent to harm. *XPO Logistics, Inc. v. Peterson*, 2025 WL 1114392, at *16 (D. Utah Apr. 15, 2025); Model Utah Jury Instructions 2d, CV1608. Plaintiff has failed to allege any facts showing any ill will, spite, or intent to injure, much less that Defendants were "primarily" motivated by such goals. Plaintiff's repeated assertions that Defendants "intended" to harm her or acted with "malice" are conclusory and entitled no weight. *CDC Newburgh v. STM Bags*, 692 F. Supp. 3d 205, 226 (S.D.N.Y. 2023); *Wynn v. Wachovia Bank, N.A.*, 2009 WL 1255464, at *4 (E.D. Va. May 6, 2009).

Plaintiff also fails to allege any facts suggesting the second type of common law malice: excessive publication.[13] Plaintiff points out that multiple Fox-affiliated local television stations republished the Article. Am Compl. ¶ 18. But those stations are separate legal entities that are not

---

[12] If common law malice could suffice to eliminate the fair report privilege, an opinion columnist would risk losing the privilege if she published an accurate summary of a criminal indictment issued against person who was a recurrent target of the writer's caustic criticisms. That outcome cannot be squared with the First Amendment. *See, e.g.*, *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1299 (D.C. Cir. 1988) ("Federal constitutional concerns are implicated as well when common law liability is asserted against a defendant for an accurate account of judicial proceedings."); Restatement (Second) of Torts § 611 cmt. b ("If the report of a public official proceeding is accurate or a fair abridgment, an action cannot constitutionally be maintained . . . .").

[13] Excessive publication requires showing that a statement was "published to more persons than the scope of the privilege requires to effectuate its purpose." *DeBry v. Godbe*, 992 P.2d 979, 985 (Utah 1999). That standard makes sense only for privileges that allow a speaker to make a statement to a limited audience—such as the privilege for participants in a judicial proceeding. *See id.* The standard does not apply to the public interest privilege, which is designed to permit speakers to inform the general public—*i.e.*, *everyone*—about matters of public interest.

defendants in this case. *See infra* n.19. And, in any event, the preexisting nationwide interest in Plaintiff's case[14] means that multiple local channels picking up the story does nothing to establish excessive publication.

### ii. Plaintiff Fails To Allege Actual Malice.

Plaintiff also fails to allege actual malice. Plaintiff "must allege *facts* to support an inference of actual malice." *Pace v. Baker-White*, 850 F. App'x 827, 831 (3d Cir. 2021) (emphasis in original). That requires facts suggesting that Defendants acted "with knowledge that [their statements] [were] false or with reckless disregard of whether [they were] false or not." *N.Y. Times Co.*, 376 U.S. at 280. Reckless disregard is a subjective standard that requires showing "a high degree of awareness of . . . probable falsity." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (quotation omitted). It "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *Id.* In fact, even an "extreme departure from professional standards" is not enough for actual malice. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665, 688 (1989). A plaintiff must plead facts indicating that the defendant "in fact entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. at 731. The Amended Complaint fails to allege any facts remotely suggesting subjective knowledge of falsity.

First, Plaintiff's allegations that the Article contained "lies," Am. Compl. ¶¶ 17, 18, D.I. 12, and that Defendants acted "intentionally," "willfully," "recklessly," *id.* ¶¶ 17, 18, 22, 33, 42, 51, with "disregard for the truth," and in "conscious disregard for Plaintiff's rights," *id.* ¶¶ 18, 22,

---

[14] *See supra* p. 4. On a motion to dismiss, the Court may take judicial notice of newspaper articles "to indicate what was in the public realm at the time," *Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006), and to illustrate "the broader social context" in which statements were made, *Condit v. Dunne*, 317 F. Supp. 2d 344, 357 (S.D.N.Y. 2004) (noticing newspaper articles on motion to dismiss defamation claim).

33, 61, are all conclusory and can be disregarded, *see, e.g.*, *Pace*, 850 F. App'x at 831-32; *Huizenga v. NYP Holdings, Inc.*, 2019 WL 1620743, at *3 (S.D.N.Y. Apr. 16, 2019).

Second, Plaintiff's repeated assertions that Defendants "fabricated," "created," or "intentionally misrepresented" claims about the indictment are equally conclusory and fail to plausibly allege malice. Claims of fabricating information can be set aside when they lack specific factual support in the complaint or when the complaint itself (or an incorporated document) shows that the claims were not fabricated. *See BYD Co. v. VICE Media LLC*, 531 F. Supp. 3d 810, 825 (S.D.N.Y. 2021); *Huizenga*, 2019 WL 1620743, at *3. Here, Plaintiff provides no factual allegations to show fabrication, and the statements track the indictment. *Supra* Part I.B.1.

Third, any alleged failure to contact Plaintiff for comment, Am. Compl. ¶ 36, D.I. 12, cannot establish actual malice. Failure to investigate or even an "extreme departure from professional standards" does not show actual malice. *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 665, 688. Accordingly, a mere "failure to seek comment from Plaintiff . . . [cannot] plausibly establish actual malice." *Arpaio v. Cottle*, 2019 WL 11322515, at *2 (D.D.C. Dec. 3, 2019).

Fourth, the claim that Defendants published a "preconceived narrative," Am. Compl. ¶ 22, D.I. 12, also falls short. Plaintiff does not make clear what "preconceived narrative" she has in mind, but, in any event, a "pre-existing agenda, even one which may be noxious to some minds, is not indicative of actual malice." *Lohrenz v. Donnelly,* 223 F. Supp. 2d 25, 48 (D.D.C. 2002) (quotation omitted); *Westmoreland v. CBS Inc.*, 596 F. Supp. 1170, 1174 (S.D.N.Y. 1984) (finding "a determined effort to confirm a previously formed suspicion . . . does not establish malice").

Accordingly, the Article is a privileged fair report under both New York and Utah law.

### 3.    Plaintiff Fails To Allege Facts Showing Fault.

The defamation claim also fails because the First Amendment requires plaintiffs to show some level of fault on the part of the speaker to recover for defamation. *Gertz v. Robert Welch,*

*Inc.*, 418 U.S. 323, 347 (1974); 1 Smolla, *supra*, § 3:1.  Because Plaintiff's criminal charges are a matter of public interest, both New York and Utah law require Plaintiff to allege facts showing malice.  The Amended Complaint fails to meet that standard.  Indeed, even if a lesser negligence standard applied, the Amended Complaint would still fail.

### a.    New York Law Bars Plaintiff's Claim Because She Fails To Allege Actual Malice.

Under New York law, plaintiffs challenging statements made "in connection with an issue of public interest," must show actual malice.  N.Y. Civ. Rts. Law § 76-a(2).  The term "issues of public interest" is defined broadly and means "any subject other than a purely private matter."  *Id.* § 76-a(1)(d).  Statements about ongoing criminal prosecutions squarely qualify.  *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 332 (S.D.N.Y. 2021).  As explained above, the Amended Complaint fails to allege actual malice.  *See supra* Part I.B.2.a.ii.

### b.    Plaintiff's Claim Fails Under Utah Law Because She Fails To Allege Common Law Malice.

Under Utah law, because the challenged statements involve a matter of public interest, they are protected by a common law privilege, and Plaintiff must allege malice to overcome that privilege.  *See Ogden Bus Lines v. KSL, Inc.*, 551 P.2d 222, 225-26 (Utah 1976).  The indictment accusing Plaintiff of obtaining $10 million of public COVID-19 relief funds by fraud plainly qualifies as a matter of public interest.  *See Seegmiller v. KSL, Inc.*, 626 P.2d 968, 978 (Utah 1981) (public interest encompasses "functioning of . . . public institutions [and] … matters involving the expenditure of public funds").  Accordingly, Plaintiff must allege common law malice, which in Utah requires showing "[1] an improper motive such as a desire to do harm or [2] that the defendant did not honestly believe his statements to be true or [3] that the publication was excessive." *Russell*, 842 P.2d at 904; *accord Murphree v. US Bank of Utah, N.A.*, 282 F. Supp. 2d 1294, 1298 (D. Utah 2003).  The Amended Complaint cannot satisfy any of those standards.

As explained above, *supra* Part I.B.2.a.i, the Amended Complaint fails to allege malice under an ill-will theory, which requires showing that the defendant was motivated primarily by an intent to harm. *XPO Logistics, Inc.*, 2025 WL 1114392, at \*16; Model Utah Jury Instructions 2d, CV1608.

Subjective doubt about the truth of the Article is the same as the actual malice standard discussed above, which the Amended Complaint fails to meet. *Supra* Part I.B.2.a.ii.

Lastly, to the extent that standard even applies, Plaintiff fails to allege any facts suggesting excessive publication.[15] *Supra* Part I.B.2.a.i.

### c.    Even If A Negligence Standard Applied, Plaintiff Has Failed To Plausibly Allege Negligence.

Even under a negligence standard, Plaintiff's claim would fail. Negligence turns on whether the defendant "acted reasonably in checking on the truth or falsity . . . of the communication before publishing it." *Seegmiller*, 626 P.2d at 976. For media defendants, that requires "only that [they] act as reasonably prudent persons in the industry would act to ascertain the truth." *Id.* at 974; *see also id.* at 976 (quoting Restatement (Second) of Torts § 580B).

Plaintiff fails to allege any facts suggesting that, in preparing an Article accurately describing the contents of her federal indictment, Defendants violated professional standards or unreasonably failed to confirm the accuracy of this description of the indictment.

## II.    PLAINTIFF'S OTHER CLAIMS FAIL FOR SIMILAR REASONS.

Plaintiff's false light, intentional interference with prospective economic advantage, and injunctive relief claims fail for similar reasons.

---

[15] The excessive publication doctrine does not apply to reporting on matters of public interest. *Supra* n.13.

### A.    Plaintiff's False Light Claim Fails.

New York does not recognize a tort of false light invasion of privacy, so the claim fails under New York law.  *See, e.g.*, *Costanza v. Seinfeld*, 181 Misc. 2d 562, 564 (N.Y. Sup. Ct. 1999). It also fails under Utah law for multiple reasons.

*First*, the claim is time-barred.  Where, as here, false light is "tied to the same operative facts" as a defamation claim, the one-year limitations period applies to both.  *See Jensen v. Sawyers*, 130 P.3d 325, 332-37 (Utah 2005); *Bates v. Utah Ass'n of Realtors,* 297 P.3d 49, 50 (Utah Ct. App. 2013); *Epps*, 2025 WL 2205982, at *2; *supra* Part I.A.

*Second*, the Article was substantially true.  *Hogan v. Winder*, 762 F.3d 1096, 1111 (10th Cir. 2014) (false light claim fails where statements could not "be construed as false"); 2 Smolla, *supra*, § 10:23 ("[T]he false light tort parallels the substantial truth rules that govern defamation."); *see also supra* Part I.B.1.

*Third*, the challenged statements are legally privileged fair reports.  *Russell*, 842 P.2d at 906 n.37 (fair report privilege applies to false light invasion of privacy); *see supra* Part I.B.2

*Fourth*, Plaintiff fails to allege fault.  Utah law generally applies the same fault standards to both false light and defamation claims.  *See Russell*, 842 P.2d at 907.  At a minimum, the false light claim fails because Plaintiff has failed to allege negligence.  *Id.*; *see also supra* Part I.B.3.

### B.    Plaintiff's Claim For Intentional Interference With Prospective Economic Advantage Fails.

*First*, Plaintiff's intentional interference claim is also barred by the statute of limitations. Intentional interference claims based on allegedly defamatory comments are subject to a one-year limitations period in both New York and Utah.  *See Potts v. Potts*, 2021 WL 4440666, at *9 (N.D.N.Y. Sept. 27, 2021); *Diamond Ranch Acad., Inc.*, 2016 WL 633351, at *8 nn.16, 19.  That period has long since expired here.

*Second*, the claim fails under Utah law because intentional interference plaintiffs must show that the defendant interfered with protected economic relations "by improper means." *Id.* at *19; *Davidson v. Baird*, 438 P.3d 928, 945 (Utah Ct. App. 2019). Where, as here, the "improper means" are purportedly defamatory statements, an intentional interference claim fails if the underlying defamation claim fails. *Id.* Accordingly, Plaintiff's intentional interference claim fails for the same reasons as her defamation claim. *Russell*, 842 P.2d at 906 n.37; *see supra* Part I. Similarly, the claim fails under New York law. New York prohibits intentional interference claims based on "harm to a plaintiff's business reputation," because such claims are "duplicative of a defamation claim." *Huizenga*, 2019 WL 1620743, at *3.

### C.    Plaintiff's Claim For Injunctive Relief Fails.

Plaintiff's claim for an injunction also fails because injunctive relief is a remedy, not a cause of action, and cannot survive absent a plausibly alleged cause of action.[16]

### III.    THE COURT LACKS PERSONAL JURISDICTION OVER MS. HENNEY.

The Court should also dismiss all claims against Ms. Henney for lack of personal jurisdiction. As Ms. Henney explains in her declaration, she is not and has never been a resident of Delaware. Henney Decl. ¶¶ 1, 5 (Ex. 4).[17] The Amended Complaint fails to allege a single Delaware contact by Ms. Henney related in any way to this action (or unrelated to this action, for that matter). Indeed, the only allegation the Amended Complaint makes about Ms. Henney (other than that she wrote the Article) is that she went to college—in Pennsylvania. Am. Compl. ¶ 16, D.I. 12. Ms. Henney's declaration confirms that she has no Delaware contacts. As a result,

---

[16] *Huckabee v. Meta Platforms, Inc.*, 2024 WL 4817657, at *7 (D. Del. Nov. 18, 2024); *Rock Star Enters., LLC v. Vill. of Sylvan Beach*, 237 A.D.3d 1601, 1604 (N.Y. App. Div. 2025); *Teague v. Christian*, 2019 WL 4686717, at *8 (D. Utah Sept. 25, 2019).

[17] The Court can consider extrinsic evidence when considering a 12(b)(2) motion. *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 670 (D. Del 2008).

Delaware's long-arm statute does not authorize jurisdiction, and jurisdiction over her also is not compatible with constitutional due process. *See Merck & Co. v. Barr Labs.*, 179 F. Supp. 2d 368, 372 (D. Del. 2002) ("[T]he Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis.").

To start, there is no statutory basis for personal jurisdiction under Delaware's long-arm statute.[18] That statute provides for personal jurisdiction over nonresidents if the "cause of action . . . arise[s] from" certain acts, including, as relevant here: "(1) Transact[ing] any business or perform[ing] any character of work or service in the State," "(3) Caus[ing] tortious injury in the State by an act or omission in this State," or "(4) Caus[ing] tortious injury . . . by an act or omission outside" Delaware if the defendant "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State." *See* 10 *Del. C.* § 3104(c). In short, the statute generally requires "some act must actually occur in Delaware." *Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 503 (D. Del. 2003); *accord Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 728 (Del. Super. 1996).

Here, Plaintiff does not allege that Ms. Henney has ever set foot in Delaware, let alone committed any act "in the State" from which the claims here arose. Ms. Henney's declaration confirms she has no contacts with Delaware in any way related to this case. She has never lived, done business, or performed work in Delaware. Ex. 4, ¶¶ 1, 5, 8. And "[n]o aspect of the research, drafting, or editing that [she] performed for the article challenged in the Amended Complaint occurred in Delaware." *Id.* ¶ 10. Indeed, when she wrote the Article, she lived and worked in

---

[18] *See URS Corp. v. Lebanese Co. for Dev. & Reconstruction of Beirut Cent. Dist. SAL*, 512 F. Supp. 2d 199, 216 (D. Del. 2007) (federal jurisdiction in diversity actions turns on long-arm statute).

New York City. *Id.* ¶ 4. Ms. Henney is thus well outside the reach of Delaware's long-arm statute. *See, e.g.*, *Kabbaj v. Simpson*, 547 F. App'x 84, 88 (3d Cir. 2013).

Exercising jurisdiction over Ms. Henney would also violate the Due Process Clause. General jurisdiction does not exist because Ms. Henney is not domiciled in Delaware, *see Celtig, LLC v. Patey*, 347 F. Supp. 3d 976, 982 (D. Utah 2018), and does not have "continuous and systematic contacts with Delaware," *Kabbaj*, 547 F. App'x at 87. Specific jurisdiction is also lacking. To establish specific jurisdiction, "the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017). "When there is no such connection, specific jurisdiction is lacking." *Id.* at 264. Here, Plaintiff does not allege any contacts with Delaware that are in any way connected to this suit, and Ms. Henney's declaration confirms that none exists. Plaintiff has not shown that Ms. Henney "purposefully availed h[er]self of conducting activity in Delaware by directly targeting [the Article] to the state, knowingly interacting with residents of Delaware via [her Article], or through sufficient other related contacts." *Kabbaj*, 547 F. App'x at 88. The mere fact that the challenged Article could be accessed "over the Internet" in Delaware is an "insufficient bas[i]s for personal jurisdiction." *Fatouros v. Lambrakis*, 627 F. App'x 84, 87-88 (3d Cir. 2015) (per curiam); *see also Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011). Rather, the defendant must manifest behavior "intentionally targeted at and focused on the forum." *Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001). Accordingly, the Court lacks personal jurisdiction over Ms. Henney.

## IV.    PLAINTIFF FAILS TO PLEAD FACTS CONCERNING FOX CORPORATION.

Claims against Fox Corporation must be dismissed for the further reason that the Amended Complaint "does not adequately allege that any Fox Corporation employee played an affirmative role in the publication of the challenged . . . statements." *Smartmatic USA Corp. v. Fox Corp.*, 213 A.D.3d 512, 513 (N.Y. App. Div. 2023) (dismissing Fox Corp.). Plaintiff pleads *no* facts

connecting Fox Corp. employees to the Article.  It was authored by Ms. Henney, published by Fox

Business (which is a Fox News property), and re-published by local Fox television affiliates

("Local Affiliates") that are not even named in the Amended Complaint.  Both Fox News (d/b/a

Fox Business), *see* Am. Compl. ¶ 3, D.I. 12, and the Local Affiliates[19] are distinct legal entities,

and Fox Corp. cannot be held liable for their actions merely because it is the ultimate parent of

Fox News and *some* of the Local Affiliates.  The "general principle of corporate law deeply

ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts

of its subsidiaries" prohibits eliding the distinction between these entities.  *United States v.

Bestfoods*, 524 U.S. 51, 61 (1998) (quotations omitted).  Nor does Plaintiff allege any facts to

pierce the corporate veil.

## CONCLUSION

The Court should dismiss the Amended Complaint with prejudice.

---

[19] The Court may take notice of government documents to show corporate separateness.  *E.g.*, *Avena v. Imperial Salon & Spa, Inc.*, 2017 WL 6389086, at *2 (M.D. Fla. Aug. 31, 2017); *Redding v. Freeman Prods., Inc.*, 1995 WL 410922, at *2 (N.D. Ill. July 10, 1995).  As the attached exhibits demonstrate, the Local Affiliates that Plaintiff identifies as having published the Article are distinct legal entities.  Ex. 5 (FCC license showing Fox 2 San Fransico-KTVU operated by Fox Television Stations, LLC); Ex. 6 (FCC license showing Fox 5 Atlanta-WAGA operated by New World Communications of Atlanta, Inc.); Ex. 7 (FCC license showing Fox 5 DC-WTTG operated by Fox Television Stations, LLC); Ex. 8 (FCC license showing Fox 6 Milwaukee-WITI operated by Fox Television Stations, LLC); Ex. 9 (FCC license showing Fox 7 Austin-KTBC operated by NW Communications of Austin, Inc.); Ex. 10 (FCC license showing Fox 9 Minneapolis-St. Paul-KMSP operated by Fox Television Stations, LLC); Ex. 11 (FCC license showing Fox 10 Phoenix-KSAZ operated by NW Communication of Phoenix, Inc.); Ex. 12 (FCC license showing Fox 11 Los Angeles-KTTV operated by Fox Television Stations, LLC); Ex. 13 (FCC license showing Fox 13 Seattle-KCPQ operated by Fox Television Stations, LLC); Ex. 14 (FCC license showing Fox 13 Tampa Bay-WTVT operated by New World Communications of Tampa, Inc.); Ex. 15 (FCC license showing Fox 29 Philadelphia-WTXF operated by Fox Television Stations, LLC); Ex. 16 (FCC license showing Fox 35 Orlando-WOFL operated by Fox Television Stations, LLC).

DATED:  August 8, 2025

**OF COUNSEL:**

Patrick F. Philbin (*pro hac vice*)
Kyle T. West (*pro hac vice*)
Chase T. Harrington (*pro hac vice*)
**TORRIDON LAW PLLC**
801 Seventeenth Street NW
Suite 1100
Washington, DC 20006
(202) 249-6900
pphilbin@torridonlaw.com
kwest@torridonlaw.com
charrington@torridonlaw.com

**DLA PIPER LLP (US)**

/s/ John L. Reed
John L. Reed (DE I.D. No. 3023)
1201 N. Market Street
Suite 2100
Wilmington, DE 19801
(302) 468-5700
john.reed@us.dlapiper.com

*Attorneys for Defendants Fox Corporation,*
*Fox News Network, LLC, and Megan Henney*

26